The Honorable Don Sallee State Senator, First District Rural Route 2 Troy, Kansas 66087
Dear Senator Sallee:
As state senator for a district that encompasses federally recognized Indian reservations, you request our opinion regarding tribal law enforcement powers. Specifically, your question is as follows:
 "Are tribal law enforcement officers who have received Kansas law enforcement training center certification authorized to apprehend and arrest persons for violation of state laws within the boundaries of the reservation in the absence of being commissioned by the sheriff of the county in which the reservation is situated or some other appropriate state law enforcement authority? In other words, do tribal law enforcement officers have the same law enforcement powers as sheriff's officers when acting within the jurisdictional boundaries of the reservation?"
The context in which your question arises involves the Kickapoo Nation's concern with the amount of time that may be required for the county sheriff's department to respond to potentially volatile situations. The tribe's law enforcement officers are often able to arrive at the scene more quickly than a sheriff's officer who may have to travel quite a distance. The tribe therefore is interested in being able to detain persons who have violated state laws on the reservation, and to transport such persons to the custody of the sheriff. It is our understanding that the tribal law enforcement officers in question have successfully completed the training required at the state law enforcement training center and have received certification from the law enforcement training commission. Apparently tribal law enforcement officers have been admitted to the training center as reserve sheriff's deputies for Brown county.
K.S.A. 22-2401 sets forth the circumstances under which a "law enforcement officer" may make an arrest in the state of Kansas. See also
K.S.A. 12-4212. Any person who is not a "law enforcement officer" is subject to the provisions of K.S.A. 22-2403 when making an arrest under the laws of this state. As used in these statutes (see K.S.A. 22-2201), the term "law enforcement officer" is defined as:
 "[A]ny person who by virtue of office or public employment is vested by law with a duty to maintain public order or to make arrests for violation of the laws of the state of Kansas or ordinances of any municipality thereof or with a duty to maintain or assert custody or supervision over persons accused or convicted of crime, . . . while acting within the scope of their authority." K.S.A. 22-2202. See also K.S.A. 12-4113.
K.S.A. 19-813 is the state law that vests sheriffs, undersheriffs and sheriffs' deputies with a duty to maintain public order. K.S.A. 12-4111
vests law enforcement officers employed by Kansas cities with the power to detain persons, to place them in custody and to arrest them for violation of municipal ordinances. Highway patrol officers are vested with authority pursuant to K.S.A. 74-2108, capitol area security officers pursuant to K.S.A. 1993 Supp. 75-4503 and university police officers are empowered by K.S.A. 76-726. The law enforcement powers of these various officers are further defined and limited by the jurisdictional boundaries established in K.S.A 1993 Supp. 22-2401a. There are no state laws vesting similar authority in tribal law enforcement officers as such. Neither are we aware of any federal laws or treaty provisions that would give the tribe authority to enforce state laws. Therefore, tribal law enforcement officers are not law enforcement officers within the definition of the Kansas code of criminal procedure. Such officers would be subject to the provisions of K.S.A. 22-2403 and would be considered private persons when making arrests for violations of state laws unless they do so pursuant to a proper appointment by the sheriff of the county in which they are located. This is true regardless whether the tribal officers have received training at the state law enforcement training center and are certified by the law enforcement training commission. While these officers may very well be qualified to perform law enforcement functions, they have not been statutorily vested with authority to enforce state laws by virtue of employment with the state or one of its political subdivisions as listed above unless they are deputized or otherwise employed by the county sheriff or other appropriate law enforcement authority.
While tribal law enforcement officers have no law enforcement powers vested by state law, the United States Supreme Court has stated that, pursuant to the tribe's retained sovereign powers, "[t]ribal law enforcement authorities have the power to restrain those who disturb public order on the reservation, and if necessary, to eject them. Where jurisdiction to try and punish an offender rests outside the tribe, tribal officers may exercise their power to detain the offender and transport him to the proper authorities." Duro v. Reina, 495 U.S. 676,109 L.Ed.2d 693, 711, 110 S.Ct. 2053 (1990). Duro involved a tribe's ability to criminally prosecute a non-tribal member in tribal court in a situation where neither the state nor the federal government were exerting jurisdiction. The Court held that the tribe could not, under its sovereign powers, prosecute non-members, but indicated that the tribe's power to exclude persons from tribal lands in order to preserve the peace remained intact unless and until diminished by federal statute or voluntarily surrendered by the tribe itself. See Brendale v.Confederated Yakima Nation, 492 U.S. 408, 106 L.Ed.2d 343, 365,109 S.Ct. 2994 (1989) (Justice Stevens concurring opinion); New Mexicov. Mescalero Apache Tribe, 462 U.S. 324, 76 L.Ed.2d 611, 619,103 S.Ct. 2378 (1983). It therefore appears that the tribe, pursuant to its sovereign powers, may detain persons who have committed an unlawful breach of the peace within the boundaries of the reservation, and may transport such persons to the proper authorities, at least as far as the reservation border. The sheriff's ability to receive and process a particular person is commensurate with his ability to receive an individual who has been placed under citizen's arrest. To determine what constitutes an "unlawful breach of the peace" over which tribal law enforcement officers have authority, the tribe should consult its legal counsel and the bureau of Indian affairs.
In conclusion, unless deputized or otherwise employed by the county in which the reservation is located, or some other appropriate state law enforcement authority, tribal law enforcement officers are not authorized to enforce state laws within the boundaries of the reservation even upon receiving certification from the Kansas law enforcement training commission. However, under the tribe's sovereign authority, and in order to preserve the peace, tribal law enforcement officers may detain persons who have committed an unlawful breach of the peace within the boundaries of the reservation and transport such persons, as far as the reservation border, to the proper authorities.
Very truly yours,
 ROBERT T. STEPHAN Attorney General of Kansas
 Julene L. Miller Deputy Attorney General
RTS:JLM:jm